### JEFFREY MFG. CO. v. MOUND COAL CO.

(District Court, N. D. West Virginia. July 2, 1914.)

1. MINES AND MINERALS (§ 70*)—LIEN FOR RENT—PROPERTY CONDITIONALLY SOLD.

The rights of a conditional vendor of machinery and material, placed by the vendee on mining property leased by him, were paramount and superior to the landlord's rights under his contingent lien for rent, though the contract of conditional sale was not recorded, where such machinery and material were not so intimately embodied in the other property of the lessee as to cause more or less disintegration of the tenant's property from the removal thereof.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 192, 197; Dec. Dig. § 70.*]

2. DETINUE (§ 19*)—DAMAGES FOR DETENTION—MEASURE.

In detinue to recover property conditionally sold by plaintiff, where the money value and not the property itself is recovered, legal interest on the purchase price under the terms of the sale contract, no part of which has been paid, is the measure of damages for the detention.

[Ed. Note.—For other cases, see Detinue, Cent. Dig. §§ 37–40; Dec. Dig. § 19.*]

At Law. Detinue by the Jeffrey Manufacturing Company against the Mound Coal Company. Judgment for plaintiff.

The plaintiff filed its declaration in the Circuit, now this court, alleging that it was entitled to recover from the defendant certain machinery and material of the value of $8,380. It alleges as ground for this demand that, in May, 1911, it entered into an agreement, embraced in three specifications, with a copartnership trading as the Mound City Coal Company, whereby, in consideration of certain agreed payments to be made and covenants to be performed, it furnished this machinery and material to this copartnership. That the latter was, upon receipt of it, to pay plaintiff $2,000 of the purchase price of $8,380 in cash, and execute interest-bearing, negotiable notes at four months for the residue, the plaintiff to retain title and ownership of the property until full and final payment therefor, with right, in case of default, to repossess itself thereof, and of any additions thereto, wherever found, without liability to refund any payments or costs incurred in installation or equipment of the machinery which, it was covenanted, should not become fixture by reason of attachment to real estate. It is averred this contract was recorded August 19, 1911, in Marshall county. Entire default in payment of the $2,000 cash on receipt of the machinery is charged, and, in consequence, it is averred that this copartnership, on August 8, 1911, executed to plaintiff seven promissory notes indorsed by C. B. Sharp, Jr., and L. G. Orr, one for $1,380, payable in 60 days, four for $1,250, each payable in three, four, five, and six months, respectively, one for $1,500, payable in seven months, and one for $500, payable in eight months, to be additional security, and with the express agreement that the provisions of the original contract of sale should not be affected thereby, and the title to the machinery should remain in plaintiff, with the right to reclaim the same as though said notes had not been given and accepted. It is then averred that this copartnership wholly

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

failed to pay the first or any other of these notes as they fell due, and, without in any manner complying with its original contract with plaintiff, and with no right to the possession of the property, but with intent to defraud plaintiff, delivered the possession of this machinery to the Mound Coal Company, defendant, a corporation formed under the laws of West Virginia, having notice of and participating in the fraudulent purpose of the copartnership, which corporation, upon demand made, has refused to surrender possession to plaintiff thereof. The defendant tendered in defense a number of pleas, which set forth its real contention to be: That prior to May, 1911, to wit, on March 22, 1911, it leased to L. G. Orr, for and on behalf of himself and C. B. Sharp, Jr., doing business as a partnership under the name of Mound City Coal Company, its coal mining plant in Marshall county. That this lease was for a term of 12 years, beginning April 1, 1911, and ending March 31, 1923, at a minimum rental or royalty of $10,000 per annum, and this copartnership operated said mine under it from April 1, 1911, to the close of the month of September following; that said lease, among other things, provided: (a) That all accruing rentals or royalties should be treated as rents reserved upon contract and secured by landlord's lien; (b) that upon default in payment of royalties, insurance premiums, or taxes re-entry could be made after 10 days' notice; (c) that mining should be continuous in accord with a system to be agreed between the mining engineers of the lessor and lessee; (d) that the lessee, upon notice to lessor, might sell the compressed air plant and use the proceeds in substituting an electric plant; (e) that in case permanent improvements were made the lessee making them could charge one-half the cost thereof against any excess royalties, accruing over the minimum provided, during the first five years, not to exceed, however, $5,000, and not to include the proceeds or value of the air plant permitted to be sold or exchanged; and (f) that prior to October 1, 1911, it was expected that the lessee would install gathering motors and dispense with the use of mules. And it is thereupon alleged that this copartnership, while occupying the premises as tenant under this lease, bought the machinery in controversy from plaintiff, placed the same on the leased premises, at which time no reservation of lien or title was filed of record, whereby the landlord's lien became attached to said machinery, to secure defendant $10,000 of rental, more than the value of said machinery, and that said copartnership has been adjudged bankrupt, abandoned the leased premises, and defendant unwillingly and from necessity retook possession, soon after October 1, 1911 of the premises, including said machinery.

The pleas were demurred to, but by consent an order was entered reserving decision thereon, but issue was joined, a jury waived, and all questions of law and fact were submitted to the court. By stipulation of counsel filed it was admitted: (1) That plaintiff was a corporation of Ohio, and the defendant one under the laws of West Virginia. (2) That plaintiff sold to the Mound City Coal Company the machinery at the time and on the terms and by the written contract filed as Exhibit A. (3) That the Mound City Coal Company was a partnership formed by L. G. Orr and C. B. Sharp, Jr., to operate the coal plant leased by it from defendant. (4) That at the time of purchase of the machinery from plaintiff this copartnership was engaged in mining and shipping coal from the leased premises by virtue of the written lease from the defendant to L. G. Orr, dated March 22, 1911, and continued operations until late in September, 1911. (5) That this lease was never recorded; that plaintiff, at the time it contracted to sell the machinery, knew that it was to be used on premises leased by Orr from defendant, but had no knowledge of the provisions of the lease. (6) That the machinery was shipped in June, 1911, and delivery was made at the contract place, unloaded there from the defendant's siding connecting the mine with the Baltimore & Ohio Railroad, operated by the railroad company under agreement with defendant, the premises being part of the leased premises. That said purchaser did not comply with the terms of sale. That the notes indorsed by Orr and Sharp were given with the understanding in regard thereto as set forth in the declaration. That demand on defendant for the machinery was made on October 11, 1911, who was and has been ever since that date in possession

thereof using it in the operation of the mine. That plaintiff's reservation of title was recorded August 19, 1911. (7) That Orr, when he negotiated the lease, represented to defendant that he and associates intended to change the system of mining and install an electric plant in lieu of the compressed air one. That leave was given by defendant to sell this compressed air one and use the proceeds in the purchase of the electric one, and that it was the intention of the defendant and lessee that such electrical plant should be purchased and become the property of the defendant under the terms and conditions set forth in the lease, but of such intention the plaintiff had no knowledge, as was true also of the representations made by lessee to the effect that at least $10,000 would be expended in the purchase of machinery to be installed on the premises, by reason of which representations concessions and advantages were secured. That after this copartnership the Mound City Coal Company, had taken possession of the machinery in controversy, or a part of it, the defendant was told by Orr that $2,000 cash had been paid upon its purchase price, unsecured notes had been given for the residue, and no reservation of title had been made thereof, or any lien retained thereon. That defendant inquired at the clerk's office and was unable to find any reservation of title of record. That this reservation of title was recorded on August 19, in a deed book, and not elsewhere. That defendant thereafter relied upon the ownership of this machinery by its lessee, without lien on it or reservation of its title as security for any default in payment of royalties, and for compensation in case the lease should be abandoned. (8) That the said Mound City Coal Company had not in fact paid plaintiff the $2,000, nor any part thereof, but had given notes for all the purchase money, and had represented to the plaintiff that J. C. McKinley, the president of defendant, had promised to and would indorse the notes given for deferred payments. (9) That the notes described in the declaration were given by this copartnership in the manner and for the purposes set forth in the declaration to plaintiff, the owner thereof, and that none have been paid, nor has any part of the consideration for the machinery ever been paid to plaintiff. (10) That Orr abandoned the leased premises after September 25th, and before October 5th, within which period Orr and Sharp left the state of West Virginia, never returned to the premises, and never resumed the business; that afterwards the copartnership was adjudged bankrupt, its property sold and proceeds distributed. That in the bankruptcy proceeding defendant enforced a landlord's lien for the same items claimed in this suit against certain of its personal property, and received on account thereof the sum of $1,615.76. (11) That early in October defendant unwillingly and from necessity retook possession of the premises. The plaintiff on the 11th of that month demanded possession of the machinery, which defendant refused to surrender, claiming it had become its property by reason of the abandonment of the lease, or else it was that of the lessee upon which it had a landlord's lien. That defendant had never sued out a distress warrant, or taken any legal steps to enforce such lien against this property except in this suit, nor has the property been seized or removed from the premises by legal process sued out by any other claimant. (12) The royalties on coal actually mined under this lease amounted to $3,244.11. The lessees were entitled to credits of at least $2,230.34, including $408.03 for supplies bought from lessor. Under the lease the minimum royalty accruing October 1st was $5,000, of which $1,822.31 had been credited to lessees, leaving a balance of $3,177.69 unpaid on due royalties, less the $1,-615.76 collected by defendant in the bankruptcy proceedings. It was further agreed that of said machinery the Mining Type 17A was sold and delivered under certain valid and subsisting United States letters patent set forth; that the Locomotive Serial No. 2134 was equipped with two M. H. 82B Motors, covered by like valid patent as were the armature brush holders thereon, which patents are particularly set forth and described in this clause of the stipulation. (13) The defendant claims, if it has not become owner of this machinery by reason of the abandonment of this lease, that it is entitled to a landlord's lien for one year's rent, due or to become due, of $10,000, less credits above set forth. If no rentals can be collected subsequent to the time when the defendant retook possession, the date of such retaking shall

be taken to be the 2d of October. The defendant has, since that date, been in possession of the plant, and operating it as its own estate. (14) Under the lease the lessee was bound to pay taxes and insurance, and a landlord's lien was reserved by defendant to secure payment thereof, but plaintiff had no knowledge thereof. The taxes, due October 1st, and the insurance due for the year 1911, amounted to $641.31, which sum was paid by defendant subsequent to October 1st. It was further agreed, during the taking of the evidence before the court, that the air compressor plant referred to in the lease was not removed and sold by Orr, the lessee, nor by any other person acting for him, but still remains at the mine and is part of the property of the landlord.

J. B. Sommerville, of Wheeling, W. Va., J. C. Simpson, of Moundsville, W. Va., and W. Wilson Carlile, of Columbus, Ohio, for plaintiff. N. C. Hubbard, of Wheeling, W. Va., for defendant.

DAYTON, District Judge (after stating the facts as above). [1] It cannot be doubted that, by the terms of the contract, the sale of this machinery, made by plaintiff to the copartnership, was a conditional one, and that title to such machinery and the right to reclaim it in case of default in payment of the purchase money, were clearly reserved. Nor is it questioned that not a dollar of such purchase price was ever in fact paid. This being true the case is clearly ruled and determined by the two very recent decisions of the Supreme Court, in Holt v. Henley, 232 U. S. 637, 34 Sup. Ct. 459, 58 L. Ed. 767, and in Detroit Steel Cooperage Co. v. Sistersville Brewing Co., 233 U. S. 712, 34 Sup. Ct. 753, 58 L. Ed. 1166. Both of these cases were taken up by certiorari from this Fourth circuit; one originating from Virginia, the other from this state and district. In both cases the rulings of the District Court and the Circuit Court of Appeals are reversed. In the first case, a conditional sale, of the kind and character involved here, and the right to remove the property, is upheld, although the contract was never recorded, as against a prior recorded mortgage providing for its lien upon all after-acquired property, as also against the trustee in bankruptcy having, under Act June 25, 1910, c. 412, § 8, 36 Stat. 838, 840 (U. S. Comp. St. Supp. 1911, p. 1500), amending section 47a (2) of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438]), all the rights of a creditor holding a lien.

The second case affirms the former's ruling in this regard, and goes a step farther and defines and narrows the possible exception to it where property has gone into possession of the conditional sale purchaser and become attached to the realty, to be where—

"the property claimed has become so intimately connected with or embodied in that which is subject to the mortgage that to reclaim it would more or less physically disintegrate the property held by the mortgagee."

That the seller in these conditional sale contracts is the real owner of the property until absolute sale is fully perfected under the terms of the contract, and that the mortgagee in an existing mortgage providing for its lien upon after-acquired property is not as to such property a purchaser without notice is clearly held in both cases. In this case a

landlord, whose tenant has acquired possession of property of another under such a contract and placed it upon the leased premises, can have no stronger claim to be an "innocent purchaser," under his landlord's contingent lien for rent, than is such mortgagee to whom, under the express terms of the mortgage, the property is transferred. The right of the seller, under conditional sale contract, who is the real owner until the sale is fully consummated, is paramount to that of either, subject only to the risk he takes of having his property "so intimately embodied" in the other property of the tenant or mortgagee as to cause more or less disintegration of the latter in case of removal thereof.

[2] It follows that judgment must be rendered in this case for the recovery of this property or the value thereof, in case recovery of it cannot be had, and also damages for its detention. If a money value is to be recovered, there will be no trouble in ascertaining the damages for detention. Such damages would be the lawful interest upon the purchase price under the terms of the sale contract. If, however, the recovery is to be of the machinery itself, then it becomes necessary to determine the extent to which its retention and use has deteriorated its value. The evidence before me is wholly inadequate for this purpose, and, unless parties can further stipulate and agree as to what this damage by reason of retention and use is, this court must hear further evidence in regard thereto.